## Richmond

**Phyllis Dockery, An Infant, Who Sues by Roy Dockery, Her Father and Next Friend v. City of Norton.**

December 2, 1963.

Record No. 5650.

Present, All the Justices.

The opinion states the case.

*Stanley H. Botts* and *Carl W. Newman* (*Shannon & Newman,* on brief), for the plaintiff in error.

*Robert T. Winston* (*W. T. Bowen,* on brief), for the defendant in error.

Eggleston, C. J., delivered the opinion of the court.

Phyllis Dockery, an infant twelve years of age, suing by her father and next friend, filed a motion for judgment against the City of Norton to recover damages for injuries received by her while playing

or climbing on a large drainage pipe which the city had stored, in anticipation of its installation, on a grass plot between the sidewalk and curb on one of its streets. The motion alleged that as the plaintiff climbed on the pipe it rolled and crushed her leg between that and another pipe. It was further alleged that the accident and the plaintiff's injuries were proximately caused by the negligence of the city, in that it stored the pipe without taking the necessary precautions to prevent its rolling, failed to erect barricades around this dangerous material, and failed to erect and maintain signs warning the public of its dangerous nature.

The defendant city filed its grounds of defense denying that it was guilty of negligence which was the proximate cause of the plaintiff's injury and alleging that she was guilty of contributory negligence.

There was a jury trial and at the conclusion of the plaintiff's evidence the lower court struck the evidence and directed a verdict for the defendant. To review the judgment rendered on that verdict we granted the plaintiff a writ of error.

These are the facts relevant to this appeal: Prior to the date of the accident, which occurred on September 17, 1957, the city had been installing drainage pipes along Tenth street. These pipes were round, constructed of concrete, and in sections 6 feet long, 28 inches in diameter, and weighing approximately 900 pounds. In preparation for the installation, the city employees had placed a number of these sections along the grass plot between the sidewalk and the curb. The sections were placed parallel to one another, and perpendicular to the sidewalk and curb. The grass plot was level and none of the sections of the pipe had been scotched or anchored to prevent its rolling or moving. Nor was there any barricade or obstruction to prevent access to the area where this material was stored, or signs indicating that the area was a dangerous one. The sections of pipe had been stored in this manner for several weeks prior to the date of the accident.

The storage area was within a block of a city school and there was evidence that children had frequently played on and around the pipes.

Evan Norton, the City Manager, testified that he was aware of these pipes in the area and the manner in which they had been stored. Because of the weight of the pipes and the force which he thought would be required to move or roll them, he did not deem it neces-

sary that they be chocked or scotched. He was likewise aware that there were no barricades around the area where the material was stored. He also admitted that he knew that children might be attracted by the pipes and play there, and that it "would be dangerous" for them to do so.

On the afternoon of the day of the accident the plaintiff, Phyllis Dockery, then twelve years old, who lived near by, accompanied by her sister and a friend, had been sent on an errand to a store. Returning along Tenth street, they decided to rest. The friend and sister sat on the grass plot while Phyllis "jumped up on" one of the sections of pipe. Since this section was not scotched or anchored it began to roll toward another section. As she attempted to extricate herself from the pipe it continued to roll and her leg was caught between it and the next section, causing severe injuries to her.

While Phyllis had seen other children playing on the pipes, she had been told by her mother not to do so. This, she said, was the only instance in which she had disobeyed that command.

In striking the plaintiff's evidence, the material portion of which has been related, the lower court held that it was not sufficient to show that the city was guilty of any negligence which was the proximate cause of the accident and the plaintiff's injuries. Counsel for the plaintiff insists, and we agree, that this was an issue which should have been submitted to the jury under proper instructions.

It is elementary that a municipal corporation must exercise ordinary care to keep its streets in a reasonably safe condition for public use and travel. 17 Mich. Jur., Streets and Highways, § 118, pp. 614-5. This duty extends to the entire width of the city's street, including the space within the bounds of the street set apart between the sidewalk and the roadway for a grass plot. 17 Mich. Jur., Streets and Highways, § 122, pp. 620, 621; *Townley* v. *City of Huntington*, 68 W. Va. 574, 70 S. E. 368, 369, 34 L. R. A., N.S., 118; *Mayor and Council* v. *Hertzler*, 167 Md. 518, 175 A. 447, 448; *Johnson* v. *Bay City*, 164 Mich. 251, 129 N. W. 29, 31, Ann. Cas. 1912B 866. See also, 25 Am. Jur., Highways, § 407, p. 702; Annotation, 19 A. L. R. 2d 1057, 1059.

While there is some conflict on the subject, the great weight of authority is to the effect that a municipality owes the duty of exercising reasonable care to children playing in the streets as well as to those using the streets for the purposes of traveling. 25 Am. Jur.,

Highways, § 429, pp. 720-1; *Id.*, 1963 Supp., § 436.1, p. 107; Annotation, 154 A. L. R., p. 1332.

As was said in *Townley* v. *City of Huntington, supra,* 70 S. E., at page 369, a city owes substantially the same duty to children properly on the streets, although engaged in play, as it does to travelers on business, that is, the duty to exercise ordinary care to keep the streets reasonably safe. For other cases to the same effect see Annotation, 154 A. L. R., pp. 1337, 1338.

Whether a municipality has discharged its duty in exercising ordinary care to keep one of its streets in a reasonably safe condition in a particular case is usually a question for the jury. 17 Mich. Jur., Streets and Highways, § 156, p. 665 *ff.* Thus, in the present case it was for the jury to say whether, in the exercise of ordinary care, the employees of the city should have taken measures to see that these pipes were not placed and kept in a dangerous condition in the city street, so that persons, and especially children, congregating there might not be injured.

The issues here are quite similar to those involved in *Board of Councilmen of City of Frankfort* v. *Allen,* 26 Ky. L. Rep. 581, 82 S. W. 292. There a contractor engaged in curbing a street had caused some heavy stones to be hauled and deposited on the street. One of these, weighing nearly a ton, was left on an incline with one end resting on the sidewalk. A 9-year-old boy climbed upon the stone and when he started to get off it fell upon him, crushing his leg. There was evidence that children were accustomed to playing upon this street. A judgment in favor of the boy for damages for his injuries was sustained, the court pointing out that it was the duty of the city to use ordinary care to see that these heavy stones were not placed and kept in a dangerous condition, so that persons, and especially children, congregating there might not be injured.

In the present case it is argued on behalf of the defendant city that the proximate cause of the plaintiff's injuries was not its negligence, if any, but her own act in climbing on the pipe and setting it in motion. Moreover, it said that in no event was an accident of this character foreseeable.

In *Norfolk & Western Ry. Co.* v. *Whitehurst,* 125 Va. 260, 263, 264, 99 S. E. 568, we pointed out that when once it has been determined that an act is wrongful or negligent, the guilty party is liable for all the consequences which naturally flow therefrom, provided the injured party is free of contributory negligence. "The

precise injury need not have been anticipated. It is enough if the act is such that the party ought to have anticipated that it was liable to result in injury to others." See also, 13 Mich. Jur., Negligence, § 22, pp. 532, 533, and cases there cited.

We have many times said that the question of proximate cause or causal connection is usually for the jury. *Selfe* v. *Hale*, 193 Va. 543, 549, 69 S. E. 2d 434, 438. "Where it is claimed that the defendant's act was not the proximate cause of the injury because the result could not reasonably have been foreseen, it is ordinarily a question for the jury whether the result should reasonably have been foreseen." 38 Am. Jur., Negligence, § 352, p. 1061. These principles apply in the present case.

We hold that the lower court erred in striking the plaintiff's evidence and instructing a verdict for the defendant. Whether the defendant city was guilty of negligence, and if so, whether such negligence was the proximate cause of the accident, and whether the plaintiff was guilty of contributory negligence were questions for the jury under proper instructions.

Accordingly, the judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*